UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____-CIV ___/___

DANIEL SAIZ, individually and on behalf of
all others similarly situated,

    Plaintiff,

v.

GRACEKENNEDY FOODS (USA) LLC,
d/b/a LA FE, a Delaware limited liability
corporation, and ALFONSO GARCIA LOPEZ,
S.A. d/b/a CONSERVAS PESCAMAR,
a foreign corporation,

    Defendants,
_____ /

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, defendant GraceKennedy Foods (USA) LLC ("GK Foods") hereby removes this action from the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida to this Court and states as follows:

### I.   PROCEDURAL HISTORY AND BACKGROUND

1.    On November 22, 2016, plaintiff Daniel Saiz ("Saiz"), on behalf of himself and all others similarly situated, commenced this proposed class action against GraceKennedy, d/b/a La Fe—a Delaware limited liability company—and Alfonso Garcia Lopez S.A. d/b/a Conservas Pescamar ("Pescamar")—a corporation organized under the laws of, and with its principal place of business in, Spain—in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No. 2016-030142-CA-01) (the "Action"). *See* Compl. ¶¶ 4 – 5.

74909742

2. On or about December 2, 2016, Saiz served GK Foods with the Summons and Complaint. On December 20, 2016, Saiz extended the time for GK Foods to answer, move, or otherwise respond with respect to the Complaint to and including February 17, 2017.

3. The Complaint alleges (i) that Pescamar supplied two types of La Fe brand canned octopus products—Octopus in Garlic Sauce and Octopus in Olive Oil (the "Octopus Products")—to La Fe during the proposed class period of November 2011 to the present (the "Proposed Class Period"), and (ii) that Pescamar sells similar Octopus products to other U.S. brands ("Pescamar Cross-Brand Octopus Products"). Compl. ¶¶ 10-11. The Complaint alleges that Octopus Products and the Pescamar Cross-Brand Octopus Products contained squid, a cheaper substitute for octopus, rather than octopus. *Id.* ¶¶ 12 & 19. Plaintiff further alleges that the proposed class may be defined as the following two subclasses: "(1) all persons in the United States who purchased the Pescamar Cross-Brand Octopus Products" during the Proposed Class Period, and "(2) all persons in the United States who purchased the Octopus Products" during the Proposed Class Period. *Id.* ¶ 21. All persons who made such purchases for purpose of resale are excluded from the classes. *Id*.

4. The Complaint asserts claims for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, negligent misrepresentation, fraud, and violation of Florida's Unfair and Deceptive Trade Practices Act. The Complaint requests that Plaintiff, and all others similarly situated, be awarded "damages, costs, interests, reasonable attorneys' fees and costs" and "for such other and further relief as this Court deems just and proper under the circumstances[.]" Compl. at pp. 8-10, 12-19, 21-22.

5. The Complaint further alleges that the size of the proposed class "could be in excess of one million persons." *Id.* ¶ 22.

6. Upon information and belief, during the Proposed Class Period, the La Fe brand Octopus Products sold at retail for between approximately $1.39 and $1.69 per unit. Declaration of Gavin Jordan dated January 3, 2017 ("Jordan Decl.")[1] ¶ 4, attached hereto as Exhibit A. Over the course of the 5-year Proposed Class Period, it is reasonable to conclude that members of the proposed class were repeat customers who purchased several units of one or both of the La Fe brand Octopus Products and/or several units of the various Pescamar Cross-Brand Octopus Products.

## II.   BASES FOR REMOVAL

7. Section 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

8. Removal is appropriate since this Court has three separate and independent bases of original jurisdiction over this Action pursuant to Section 1332:  diversity under 28 U.S.C. § 1332(a) and two separate provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

**I.     Diversity of Citizenship Under Section 1332(a) Is Satisfied**

9. This Court has original subject matter jurisdiction over the Action because diversity of citizenship exists pursuant to Section 1332(a)(1)&(3). Section 1332(a) grants district

---

[1] Where a defendant follows the requirements of 28 U.S.C. § 1446(b)(1) and seeks to remove a case within 30 days of first receiving a summons and complaint, the notice of removal may be supplemented with evidence in the form of affidavits, declarations and other documentation to establish that the amount in controversy requirement has been satisfied.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010).

courts original jurisdiction over civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states, (2) citizens of a state and citizens of a foreign state, or (3) citizens of different states and in which citizens or subjects of a foreign state are additional parties. 28 U.S.C. § 1332(a)(1) - (3).

10.    The Complaint alleges that named plaintiff Saiz is a citizen of Florida, and defendant Pescamar is a citizen of Spain. Compl. ¶¶ 3 & 5. Plaintiff also alleges that defendant GK Foods is organized and existing under the laws of the state of Delaware. While the Complaint alleges that GK Foods has its principal place of business in Florida, *id.* ¶ 4, it maintains its principal place of business in the state of New Jersey. *See* Jordan Decl. ¶ 3. The "principal place of business" of a corporation is the corporation's "nerve center"—i.e., the place where the corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192-95 (2010) (holding "nerve center" test is the method for determining a corporation's principal place of business; the nerve center is the "place where a corporation's officers direct, control, and coordinate the corporation's activities" and is normally the place which the public considers the corporation's main place of business). Here, GK Foods' nerve center is located in New Jersey because its corporate headquarters and principal place of operations is in Moonachie, New Jersey, which is where most of the company's senior corporate officers, including the CEO and CFO, are based, where it keeps many of the corporate records and files, and from which it directs, controls and coordinates the company's operations, including the day-to-day financial, accounting, and HR decisions. See Jordan Decl. ¶ 3. There is, therefore, complete diversity of citizenship in this Action.

11.     Furthermore, the total amount of sales at issue well exceeds the minimum jurisdictional amount of $75,000, given that (i) the Complaint alleges that the size of the proposed class could be in excess of one million persons, Compl. ¶ 22, and (ii) upon information and belief, the La Fe Octopus Products at issue sold at retail for between approximately $1.39 and $1.69 per unit during the Proposed Class Period of November 2011 to the present. *See* Jordan Decl. ¶ 4.

12.     Although GK Foods denies any and all liability, if GK Foods were to owe each putative class member the minimum cost of the product purchased, such damages would exceed $1.39 million dollars.[2] Accordingly, the amount in controversy in this Action exceeds $75,000, exclusive of interest and costs. Thus, pursuant to Section 1332(a), this Court has original diversity jurisdiction over this Action.

**II.     CAFA is Satisfied**

13.     This Court also has original jurisdiction pursuant to two separate and independent provisions of CAFA, Section 1332(d)(2)(A) and Section 1332(d)(2)(C), because (i) the number of proposed class members is 100 or greater, (ii) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and (iii) minimum diversity of citizenship under CAFA exists because any member of a class of plaintiffs is a citizen of a state different from any defendant (Section 1332(d)(2)(A)) and because any defendant is a citizen or subject of a foreign state (Section 1332(d)(2)(C)). *See* 28 U.S.C. § 1332(d)(2)(A) & (C); 28 U.S.C. § 1332(d)(5)(B).

14.     Because CAFA was enacted to facilitate federal courts' adjudication of certain class actions, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

---

[2] Indeed, the jurisdictional amount in controversy under Section 1332(a) would be met even if the putative class members recovered only a small fraction of the actual retail price of the products they purchased during the Putative Class Period.

### (i)  More Than 100 Proposed Class Members

15. CAFA's requirement that the number of members of all proposed plaintiff classes in the aggregate must exceed 100 is met since, as alleged in the Complaint, "the proposed class could be in excess of one million persons."  *See* Compl. ¶ 22; 28 U.S.C. § 1332(d)(5)(B).

### (ii)  The Amount Plaintiffs Placed in Controversy Exceeds $5 Million

16. The amount Plaintiffs placed in controversy in this Action also exceeds $5 million.  CAFA requires that, for the district court to exercise jurisdiction, the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  In addition, the claims of "the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  Here, Plaintiffs allege that "[t]his is an action for damages in excess of $15,000.00 exclusive of attorneys' fees, costs and interest."  *See* Compl. ¶ 1.  However, where, as here, the jurisdictional amount is not expressly alleged, it nevertheless can be ascertained where it is "facially apparent" or "readily deducible" from the complaint.  *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1211 (11th Cir. 2007).  Furthermore, although a defendant must show that the amount in controversy likely exceeds the jurisdictional amount, it is not required to prove the amount in controversy "beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754-55 (11th Cir. 2010).

17. The amount in controversy in this Action exceeds $5,000,000, exclusive of interest and costs, given that, as set forth in paragraphs 5, 6 and 16, *supra*, (i) the claims of "the individual class members shall be aggregated," (ii) as alleged in the Complaint, the size of the proposed class could be in excess of one million persons, (iii) the retail price per unit of the

Octopus Products at issue is between approximately $1.39 and $1.69, and (iv) it is reasonable to conclude that the class includes repeat customers who purchased several units of the Octopus Products during the alleged five-year class period.  *See also* Jordan Decl. ¶ 4.  Accordingly, although GK Foods denies Plaintiff's allegations and denies that Plaintiff or the class he purports to represent is entitled to the relief sought in the Complaint, based solely on the portion of damages requested by Plaintiff to compensate proposed class members for the purchase price of the units of Octopus Products purchased during the Proposed Class Period, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18.    In addition, the foregoing does not include other damages sought by Plaintiff, such as reasonable attorneys' fees, which may be available to the prevailing party under Florida's Unfair and Deceptive Trade Practices Act, two of the claims asserted in the Complaint. See Fla. Stat. § 501.2105.  Reasonable attorneys' fees that are authorized by statute may also be included in determining the amount in controversy.  *See DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013) (finding when statute authorizes recovery of attorneys' fees and plaintiff has so requested those fees, a reasonable amount is included in the amount in controversy for the purposes of determining whether the court has diversity jurisdiction).  In Eleventh Circuit cases involving class action settlements with a common fund, the bench mark for an award of attorneys' fees is typically at least 25 percent.  *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015); *see also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-775 (11th Cir. 1991) (stating that district courts view 25% as a "bench mark" percentage fee award "which may be adjusted in accordance with the individual circumstances of each case").  Here, using even a conservative figure—the bench mark 25%—to estimate attorneys' fees that Plaintiff would likely recover as a prevailing party would result in

hundreds of thousands of dollars in attorneys' fees. Such attorneys' fees, combined even only with compensatory damages sought by Plaintiff will more likely than not satisfy the $5 million jurisdictional requirement.[3] Accordingly, the amount in controversy well exceeds $5,000,000.

19. Indeed, a number of similar class action cases that have used comparable methods of calculating damages have resulted in significant settlement awards to the plaintiffs. *See, e.g. Miller v. Ghirardelli Chocolate Company*, Case No. 3:12-cv-04936, 2015 WL 758094, at *1 (N.D.Cal. Feb. 20, 2015) (order approving class settlement) (case involving allegations that Ghirardelli misled customers into believing its "White Chips" product contained white chocolate and by improperly labeling some products as "all natural;" settled for $5.25 million where class members were entitled to $1.50 per purchase of white chips and $0.75 for "all natural" products, with no cap on amount paid for purchases corroborated by proof of purchase, and a maximum of $24 without proof of purchase), attached hereto as Exhibit B; *Eggnatz v. Kashi Co.*, No. 12-21678, Final Judgment and Order Supplementing Final Judgment With Stipulation of Settlement, at p.11-12 (S.D. Fla. Feb. 1 and 4, 2016) (Kashi Co. resolved class action claims concerning mislabeling products as "all natural" by agreeing to pay up to $3.9 million for class members who could receive $0.55 per package without proof of purchase (up to a maximum of 27 boxes), whereas those with proof of purchase entitled to full reimbursement without limit on number of items), attached hereto as Exhibit C; *In RE: Blue Buffalo Co., Ltd. Marketing and Sales Practices Litigation*, No. 4:14 MD 2562, Motion and Memorandum in Support of Final Approval of Class Settlement, at pp.1, 5-6, and Final Order and Judgment (E.D. Mo. May 12 and June 6, 2016) (Blue Buffalo Co. settled claims concerning labeling promise that pet food products included no chicken, corn, wheat, soy, or artificial flavors, by paying $32 million into a common

---

[3] In setting forth these calculations, GK Foods does not admit that it is liable to Plaintiff in this or any amount, and, in fact, GK Foods denies liability to Plaintiff in any amount.

fund, from which over 100,000 claimants could collect up to $100 in eligible purchases or up to $2,000 with proof of purchase), attached hereto as Exhibit D; *Hendricks v. Starkist Co.*, No. 13-cv-729, Order Granting Final Approval of Settlement, pp.7-9 (N.D. Cal. Sept. 9, 2016) (court noted that $12 million settlement to resolve claims of underfilling cans of tuna was only a "single-digit percentage of the maximum potential exposure," however, court accepted proposed settlement of the over 2.5 million claims submitted, reimbursed at a rate of $1.97 cash per claim or a $4.43 Starkist voucher per claim), attached hereto as Exhibit E.

(iii) **Diversity of Citizenship Under CAFA Exists**

20. The diversity of citizenship requirement for CAFA removal is likewise satisfied under both 28 U.S.C. § 1332(d)(2)(A) and § 1332 (d)(2)(C). While diversity removal normally requires complete diversity between plaintiffs and defendants, for removal of a class action under CAFA, only "minimal diversity" is required—*i.e.*, that at least one member of a class of plaintiffs be diverse from one defendant. *See id.* This requirement is readily satisfied here.

a. **Section 1332(d)(2)(A).** The proposed class of plaintiffs consists of citizens of all U.S. States, including Saiz who is a citizen of Florida. GK Foods is a Delaware corporation with its nerve center and, therefore, its principal place of business, in New Jersey. Jordan Decl. ¶ 3. Pescamar is a foreign citizen. Accordingly, at least one, and in fact many, of the proposed members of the class of plaintiffs are citizens of States different from any defendant. Thus, pursuant to Section 1332(d)(2)(A), this Court has jurisdiction over this Action, given that, as set forth in paragraphs 16-19, *supra*, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and a member of a class of plaintiffs is a citizen of a State different from any defendant.

b.  **Section 1332(d)(2)(C)**.  Saiz is a citizen of Florida, Pescamar is a citizen of Spain, and, as set forth in paragraphs 16-19, *supra*, the amount in controversy in this Action exceeds $5,000,000, exclusive of interest and costs.  Thus, this Court also has jurisdiction over this Action pursuant to Section 1332(a)(2)(C), given that the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and a member of a class of plaintiffs is a citizen of a State and any defendant is a citizen or subject of a foreign state.

### III.  THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

21. In compliance with 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon GK Foods are attached hereto as composite Exhibit F.

22. In compliance with 28 U.S.C. § 1446(b)(2)(B), GK Foods timely files this Notice of Removal within 30 days after being served with the Summons and Complaint.[4]

23. This Court is a proper venue for this Action pursuant to 28 U.S.C. § 1441(a).  The United States District Court for the Southern District of Florida embraces the County of Miami-Dade, in which this Action is now pending.  *See* 28 U.S.C. § 89(c).

24. GK Foods files herewith a Civil Cover Sheet and has made payment of the required filing fee.  No previous application for the relief sought through this Notice of Removal has been made to this or any other court.

25. Pursuant to 28 U.S.C. § 1446(d), upon the filing of this Notice of Removal, written notice of the filing will be served upon Plaintiffs' attorneys, as provided by law, and copies of this notice will be filed with the Clerk of the Circuit Court, Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

---

[4] The 30th day from service of process on GK Foods fell on Sunday January 1, 2017. Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when the last day of the time period is "a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday."  Accordingly, since Monday January 2, 2017 was a legal holiday, the time period for GK Foods to remove this Action continued to run until and including Tuesday, January 3, 2017.

74909742

26.     Upon information and belief, Plaintiff has not yet served Pescamar with the Summons and Complaint.  Therefore, pursuant to Section 1446(b)(2)(A), Pescamar's consent to removal of this Action is not necessary.

27.     No admission of fact or liability is intended by this Notice of Removal, and GK Foods does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and it specifically reserves its right to assert any applicable defenses and/or objections.

WHEREFORE, for the foregoing reasons, GK Foods prays that this action proceed in its entirety in this Court as an action properly removed thereto.

Dated:  January 3, 2017

    Respectfully submitted,

    HUGHES HUBBARD & REED LLP

    By: /s/Aviva L. Wernick
    Aviva L. Wernick, Esq.
    Florida Bar No.: 0697281
    aviva.wernick@hugheshubbard.com
    Jeffrey Goldberg, Esq.
    Florida Bar No.: 118689
    jeffrey.goldberg@hugheshubbard.com
    201 South Biscayne Boulevard
    Suite 2500
    Miami, Florida, 33131-4332
    Phone: (305) 358-1666
    Fax:    (305) 371-8759

    Attorneys for Defendant GraceKennedy Foods (USA) LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/Aviva L. Wernick
Aviva L. Wernick

## SERVICE LIST

*Service by E-Mail*
James P. Gitkin, Esq.
Fla. Bar No. 570001
SALPETER GITKIN, LLP
One East Broward Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 467-8622
E-Mail: jim@salpetergitkin.com

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 North California Boulevard
Suite 940
Walnut Creek, CA 94596
Telephone (925) 300-4455
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

74909742